UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:05-CV-125-S

JAMES HUFFINES, et al.                                                                                    PLAINTIFFS

v.

JOHN D. REES, COMMISSIONER                                                                      DEFENDANT

## MEMORANDUM OPINION

Nine *pro se* prisoners challenge the conditions of their confinement in the Kentucky State Penitentiary under 42 U.S.C. § 1983. They seek declaratory and injunctive relief from John Rees, Commissioner, Kentucky Department of Corrections. This matter is before the Court for screening, pursuant to 28 U.S.C. § 1915A. The Court will dismiss the complaint for failure to state a claim on which relief may be granted.

### I.

When a prisoner commences a civil action against a government entity, officer, or employee, the district court must review the complaint, before service of process on the defendants, to identify "cognizable claims" and to dismiss any portion of the complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).

The district court must liberally construe the allegations in a light most favorable to the plaintiff and accept all factual allegations as true. *Prater v. City of Burnside*, 289 F.3d 417, 424 (6th Cir. 2002). The district court better serves "substantial justice" by examining the "thrust, not just the text," of *pro se* litigants' allegations. *Burton v. Jones*, 321 F.3d 569, 573-74 (6th Cir. 2003). Although the court holds *pro se* pleadings to a less stringent standard than formal

pleadings drafted by lawyers, the district court is under no duty to conjure up unpled allegations. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *see also Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).

A complaint fails to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The complaint must contain more than bare legal conclusions. *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 726 (6th Cir. 1996). The complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

## II.

Nine prisoners claim they are unconstitutionally confined in disciplinary segregation in the penitentiary because they suffer mental disorders.[1] They seek a declaration of rights to be held in a thousand-bed, mental health facility and an order directing the state to create and to fund such a facility. Plaintiffs identify both the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process as grounds for relief.

Plaintiffs premise their request for declaratory relief on the implicit contention that the current mental health facilities within the commonwealth do not provide the custody assignment they seek. The Kentucky Corrections Psychiatric Center ("KCPC") is an entity operated by the

---

[1] Plaintiffs are James Huffines, Mark Jenkins, Chad Schmidt, Uriah Marquis Pasha, James Armour, Donald Moore, Jerome Gunn, Willis Young, and Charles Copeland. Initially, twenty-two inmates were listed on the complaint as plaintiffs, but many either failed to sign the complaint or to correct deficiencies with respect to proceeding *in forma pauperis* under 28 U.S.C. § 1915.

Kentucky Human Resources Cabinet on site of the Luther Luckett Correctional Complex, itself a a medium to minimum security facility of the Kentucky Department of Corrections ("DOC").[2] According to the complaint, KCPC transfers post-conviction patients to the DOC's custody in a 150-bed unit called the Corrections Psychiatric Treatment Unit ("CPTU"), which is located within the Kentucky State Reformatory.  According to the complaint, the CPTU has a 50-bed segregation unit for "troublesome" prisoners.  But, Plaintiffs complain, the aggressive, mentally ill prisoners are transferred to the penitentiary.

The complaint does not specify the nature of each Plaintiff's mental disorder, but includes references generally to depression, schizophrenia, bipolar disorder, suicide attempts, and violent, self-mutilating behaviors.  Plaintiffs allege each suffers a mental disorder as evidenced by being prescribed medication for same or by having received treatment at KCPC (presumably as pretrial detainees) or the Reformatory's CPTU.  According to the complaint, Plaintiffs Pasha and Armour were both adjudicated guilty but criminally insane on their underlying, state convictions.  On the other hand, Plaintiff Jenkins complains in the grievance documentation attached to the complaint that Plaintiff Pasha's confinement in disciplinary segregation created a health hazard to Jenkins and other "non-mentally ill prisoners" held in segregation.  (Compl., Ex. PP at p. 4.)

Conditions at the penitentiary deprive the mentally ill of "general living conditions" because of their aggressive behavior, Plaintiffs contend, by incurring disciplinary action and years of segregation despite these prisoners' inability to learn from their mistakes or to conform their conduct to prison rules.  Penitentiary staff subdue segregated prisoners, if they refuse to

---

[2] <<www.corrections.ky.gov/llcc/about/>> (last visited Mar. 10, 2006.)

shower or fail to comply with orders, with short and long wooden batons, mace spray, and taser guns and shields, means that adversely affect the mentally ill. These staff persons, Plaintiffs allege, lack training to identify and to interact with the mentally ill and employ such force without prior reference to medical records. In a mental health facility, Plaintiffs allege, inmates are never subdued by electric shock and are restrained only as long as it takes to stabilize them.

Plaintiffs allege at the penitentiary, however, they are punished over and above the sentence imposed for their convictions because of having a mental disorder. Each Plaintiff is housed in disciplinary segregation, according to the complaint, for convictions related to assaults on staff persons. Their segregation sentences exceed one year and include the loss of non-restorable, good-time credits. According to the complaint, they sometimes receive up to ten disciplinary reports for a singe episode of manic depressive behavior. Plaintiff Schmidt in particular has been refused dental treatment for the length of his disciplinary segregation. They receive no mental health treatment, Plaintiffs allege, other than a psychological evaluation every 90 days. The psychologist at the penitentiary only makes referrals for treatment. They also complain they only agree to cell restrictions to avoid recreation with the non-mentally ill prisoners, who assault and abuse them on account of their mental disorders.

More than 200 pages of exhibits are attached to the complaint that is, itself, 19 pages in length. Included are copies of grievance documentation concerning the treatment of the mentally ill, exhibits B, E, H, CC, MM, and Plaintiff Schmidt's claim for dental repair, exhibit D. The other exhibits address extraneous matters, such as food temperature, portions, and service.

### III.

A threshold issue arises whether this Court retains jurisdiction to review Plaintiff Pasha's claims in light of his transfer from the penitentiary to another state facility, the Western Kentucky Correctional Complex.

Under Article III of the Federal Constitution, the judicial power of the federal courts extends to actual, ongoing controversies between litigants. *Deakins v. Monaghan*, 484 U.S. 193, 199 (1998). In actions for declaratory or injunctive relief, a change in circumstances, such as a prisoner's transfer to a different facility, typically renders the equitable claim moot and subject to dismissal for want of subject matter jurisdiction. *See Dellis v. Corrections Corp. of America*, 257 F.3d 508 (6th Cir. 2001); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

An exception to the mootness doctrine, however, requires adjudication of claims that are capable of repetition, yet evade review. *Weinstein v. Bradford*, 423 U.S. 147 (1975). If a claimant has a reasonable expectation his claim will recur, when an occurrence itself is too short of a duration to be fully litigated prior to its expiration, the claim is deemed to be a sufficiently live controversy rather than moot. *Id.*; *Vitek v. Jones*, 445 U.S. 480 (1980).

Today, Plaintiff Pasha may find himself in a different custodial setting; but, there is no impediment to his return transfer to the penitentiary or to disciplinary segregation for the same reasons he challenges here. Because his claims fall with this exception to the mootness doctrine, the Court concludes the institutional transfer has not stripped the Court of jurisdiction to review his equitable claims.

## IV.

Plaintiffs essentially claim they have a constitutional right to be transferred from the penitentiary, either because conditions there currently violate evolving standards of decency in the disciplinary segregation of inmates having mental disorders – an Eighth Amendment claim – or because they have a liberty interest in a mental health assignment in the proposed thousand-bed facility or the DOC's current facilities, the CPTU or KCPC – a due process claim. The Court concludes neither claim supports the declaration of rights they seek.

The transfer of an inmate from one prison to another lies within the discretion of prison administrators. *McKune v. Lile*, 536 U.S. 24, 39 (2002) (stating, "It is well settled that the decision where to house inmates is at the core of prison administrators' expertise," and citing *Meachum v. Fano*, 427 U.S. 215, 222-24 (1976)). As a general matter, an inmate has no liberty interest in a particular classification, prison assignment, or transfer even if the inmate loses access to rehabilitative programs and experiences more burdensome conditions than before. *McKune*, 536 U.S. at 39; *Meachum*, 427 U.S. at 224. "[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995). The *Meachum* Court stated:

> [G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison, if, as is likely, the State has more than one correctional institution. The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.

*Meachum*, 427 U.S. at 224 (emphasis original).

Since *Meachum*, the Supreme Court has nevertheless ruled that the Due Process Clause of the Fourteenth Amendment curtails prison administrators' discretion in limited circumstances, such as transfers that entail a loss of good time credits, *Wolff v. McDonnell*, 418 U.S. 539 (1974), or certain disciplinary confinement, *see Sandin v. Conner*, 515 U.S. 472, 485-86 (1995), or transfer to a "supermax prison," *Wilkinson v. Austin*, — U.S. —, 125 S.Ct. 2384 (2005).  In these circumstances, where the Court has found an inmate's interest has "real substance," the Due Process Clause entitles an inmate to minimum procedures necessary to insure that prison administrators do not arbitrarily abrogate his rights.  *See Wolff*, 418 U.S. at 557.

Here, the complaint contains no allegations that any plaintiff has been deprived of procedural safeguards before sentenced to punitive segregation.  Plaintiffs in fact concede they have violated prison rules and are so confined on convictions for assaults upon staff.  Nor do Plaintiffs challenge the adequacy of those procedures that resulted in their segregation, as in the "supermax" case of *Wilkinson v. Austin*, 125 S.Ct. at 2395-99.

Rather, Plaintiffs apparently contend the existence of a mental disorder exempts an inmate from discretionary transfer or classification under the Due Process Clause.  Plaintiffs challenge, therefore, not so much their convictions resulting in disciplinary segregation but more in the first instance, that their discharge from KCPC or CPTU deprived them of a liberty interest in continued confinement in a mental health facility or program.

Whether Plaintiffs have such a liberty interest depends, again, on the nature of the deprivation.  Involuntary transfer for the treatment of a mental disorder or the involuntary administration of psychotropic drugs, the Supreme Court has held, are deprivations of real

substance that give rise to protection under the Due Process Clause. *Sandin*, at 484. In point of fact, prison administrators must afford an inmate procedural safeguards *before* transfer to a mental facility out of regard for any stigma associated with involuntary treatment of mental illness. *Vitek v. Jones*, 455 U.S. 478 (1980).

Here, Plaintiffs seek relief on the inverse proposition of *Vitek*: that due process compels placement of inmates with mental disorders in a mental health facility. This contention arguably raises substantive due process concerns. Does the Constitution prohibit prison administrators, even if fair procedures are followed, from discharging inmates with mental disorders from a mental health program or facility and transferring these inmates to the penitentiary?

The Kentucky Corrections Policies and Procedures, Number 18.11, Placement for Mental Health Treatment in CPTU or KCPC (eff. 12/19/01), address discharge from these programs in terms of medical judgment. For example, if an inmate, who voluntarily admitted himself to one of these programs, requests discharge, and such discharge is against the medical advice of KCPC or CPTU staff, the discharge request triggers *Vitek* procedures for continued mental health treatment. These procedures require staff to complete discharge referral forms and forward it and other medical records to the receiving institution. These procedures further provide forms for inmate requests for voluntary placement in KCPC or CPTU. The complaint contains no allegations whether Plaintiffs have availed themselves of these procedures.

It is the Court's considered judgment that the Eighth Amendment rather than the Due Process Clause provides exclusive guidance for analyzing these claims. The Supreme Court continues to hold that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not

the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994). This Court concludes it must dismiss the due process claim, therefore, on the ground that prison administrators retain the discretion to confine inmates with mental disorders in the penitentiary and subject them to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Eighth Amendment.

The Court further concludes that the complaint fails to state a claim that conditions of confinement in the penitentiary's punitive segregation, including the use of taser guns and shields as a general matter, violate the Eighth Amendment. "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. The Amendment prohibits, therefore, only those conditions that deny the 'minimal civilized measure of life's necessities.'" *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981); *Hadix v. Johnson*, 367 F.3d 513 (6th Cir. 2004); *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001). The complaint contains no allegations that support a claim that Plaintiffs are deprived of the minimal civilized measure of life's necessities in violation of the Eighth Amendment.

This claim is distinct from an Eighth Amendment claim for the alleged deliberate indifference to a serious medical, including mental health, need under *Estelle v. Gamble*, 429 U.S. 97 (1976). The complaint contains allegations that inmates are evaluated periodically by a mental health professional and, if necessary, referred for treatment. To the extent Plaintiffs seek recovery under a theory of deliberate indifference, this claim must fail on grounds that a dispute

9

about the proper diagnosis or whether treatment is indicated is a matter of medical judgment, not deliberate indifference. *Id.* at 107. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also Durham v. Nu'man*, 97 F.3d 862, 869 (6th Cir. 1996).

The Court concludes the complaint contains no allegations that would support a declaration that inmates having mental disorders, confined in the penitentiary's disciplinary segregation for assaults upon staff, without challenge to the procedures that resulted in punitive classification, have a right to be transferred from the penitentiary to a mental health facility. Neither the Eighth Amendment nor the Due Process Clause of the Fourteenth Amendment provides a basis for such relief.

## V.

The Court will address Plaintiff's Schmidt's claim of the denial of dental treatment. An inmate's right to medical care, generally, arises under the Eighth Amendment, which prohibits the infliction of cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that the Eighth Amendment prohibits penal measures that involve the unnecessary and wanton infliction of pain); *Napier v. Madison County*, 238 F.3d 739 (6th Cir. 2001). On the merits of a medical claim, however, prisoners typically face a high hurdle.

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 105-06. The Eighth Amendment neither guarantees that prisoners will have unqualified access to

health care, *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor imposes a duty equivalent to state-law liability for medical malpractice, *Estelle*, 429 U.S. at 106. Thus, mistake, inadvertence, even negligence fall short of deliberate indifference. *Id.*

A medical decision whether a form of treatment is indicated does not represent cruel and unusual punishment. *Id.* at 107. The medical treatment at issue must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or [to be] intolerable to fundamental fairness." *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also Durham v. Nu'man*, 97 F.3d 862, 869 (6th Cir. 1996).

Here, the complaint fails to state a constitutional claim that Plaintiff suffered a deliberate indifference to a serious medical need. The complaint establishes that Plaintiff complains of a dental complaint that medical personnel consider to be non-urgent, a medical decision that lies within the judgment of medical personnel. Plaintiff's conclusory allegations of inadequate medical care and his dispute over what treatment is necessary do not rise to the level of a constitutional claim.

The Court will enter an Order consistent with this Memorandum Opinion.

Dated:

cc: Plaintiffs, *pro se*

4411.007